1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CHIEU EDWARDS,

11                Plaintiff,                No. 2:10-cv-00092 LKK KJN PS

12        vs.

13   AURORA LOAN SERVICES, LLC;
     and DOES 1-50,
14
                   Defendants.             FINDINGS & RECOMMENDATIONS
15
     _____/
16

17             Presently before this court is defendant's motion to dismiss plaintiff's complaint

18   (Dkt. No. 30-1), a request for judicial notice ("RJN") in support thereof (RJN, Dkt. No. 30-2),

19   defendant's motion to expunge lis pendens (Dkt. No. 32-2), and request for judicial notice in

20   support thereof (Dkt. No. 32-3).  Defendant's motion for an order expunging the lis pendens also

21   seeks an award of costs and attorneys' fees in the amount of $1,250.  (Dkt. No. 32-1 at 12-13.)

22   Plaintiff opposed these motions in a single written opposition.  (Oppo., Dkt. No. 41.)  The

23   undersigned has fully considered the parties' briefs and the entire record in this case and, for the

24   reasons stated below, recommends that defendant's motion to dismiss be granted.  The

25   undersigned also recommends that the motion to expunge lis pendens be granted, but

26   recommends that the accompanying request for attorneys' fees be denied.

1

I.     BACKGROUND

Plaintiff Chieu Edwards ("Edwards" or the "plaintiff"), proceeding without counsel in this action, filed a complaint in San Joaquin County Superior Court on December 24, 2009.  (Dkt. No. 2-2.)[1]  On January 12, 2010, defendant Aurora Loan Services, LLC ("Aurora" or "defendant") filed a notice of removal pursuant to 28 U.S.C. §§ 1331, 1367, 1441 and 1446. (Dkt. No. 2.)

Defendant filed a motion to dismiss plaintiff's complaint.  (Dkt. No. 8.)  The undersigned granted the motion, but gave plaintiff leave to amend her pleading to correct for various defects.  (Dkt. No. 28.)  Those defects included a failure to clearly allege how defendant might have violated the law, and reliance upon a legally questionable theory that an alleged "Bonded Promissory Note" served as legal tender fully satisfying plaintiff's loan debt.  (Id.)

On August 4, 2010, plaintiff filed a First Amended Complaint (the "FAC"). (FAC, Dkt. No. 29.)  On August 17, 2010, defendant filed the pending motion to dismiss the FAC.  (Dkt. No. 30.)  Defendant filed the pending motion to expunge lis pendens and for costs and attorneys' fees that same day.  (Dkt. No. 32.)

Plaintiff appears to have copied large segments of text and pasted them into her FAC, making the FAC's factual allegations unclear.  The FAC's inclusion of pages of argument and lengthy discussions of the history of banking in the United States obscures the few factual allegations within the pleading.  Nonetheless, it appears the FAC attempts to assert five formal claims for relief, which sometimes include other claims within their supporting paragraphs. These claims are: (1) "Denial of Constitutional Substantive Rights of Due Process" (which, as pleaded, appears to include a claim for alleged wrongful foreclosure (FAC at 7)); (2) "Bank Fraud" (which, as pleaded, appears to include claims for alleged violations of the Truth in

---

[1]  This action proceeds before the undersigned pursuant to Eastern District of California Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1), and was reassigned by an order entered February 9, 2010.  (Dkt. No. 6.)

1    Lending Act ("TILA") and the Real Estate Settlement Procedures Act ("RESPA") based on an

2    alleged non-disclosure); (3) "Willful Misrepresentation, Non-Disclosure, and Withholding of

3    Material Facts and Documentation"; (4) "Failure to Name Real Party of Interest"; and (5) "TILA

4    Violations." (FAC at 6, 9, 13, 14, 19.) These claims arise from an alleged loan secured by real

5    property in Lathrop, California (the "subject property"), and the ultimate foreclosure and trustee's

6    sale of that property.

7            While the FAC's factual allegations are not straightforward and are often buried

8    within conclusions and legal arguments, it is apparent that the FAC alleges that plaintiff

9    "submitted a signed application for a home loan and received the proceeds from said alleged loan

10   on or about March 30, 2006[,] the date of recording a Deed of Trust signed by" plaintiff. (FAC

11   at 4-5.) Later, the foreclosure process was initiated and defendant sold the subject property

12   through a trustee's sale. (Id. at 5.) The FAC alleges that, prior to the trustee's sale, defendant did

13   not place "into any court record" any evidence of "actual cost they allegedly paid for their interest

14   in the subject loan transfer or the subject private land and house." (Id. at 5.) The FAC also

15   alleges that "defendant QUALITY LOAN SERVICE CORPORATION, as so-called named

16   Trustee of the Deed of Trust and participant in the alleged Trustee Sale" failed to issue a "receipt

17   as evidence of satisfaction of all claims against the subject property."[2] (Id. at 10.) Plaintiff

18   alleges that defendant could not properly foreclose without a "judicial determination of the status

19   of said Defendant as the owner of the subject property in a Court and by way of a Quiet Title

20

---

21          [2] The undersigned notes that the FAC makes only this single reference to "QUALITY
     LOAN SERVICE CORPORATION" (hereinafter "Quality"). (FAC at 10.) While Quality is
22   described as a "defendant" in this sole reference, plaintiff did not name Quality in her original
     pleading, did not attempt to substitute Quality in the stead of a previously-named "Doe"
23   defendant, did not name Quality in the caption of her FAC, and did not seek leave of court to add
     Quality as a defendant. A review of the court's docket confirms plaintiff has not filed any
24   certificates of service suggesting Quality has been served with any documents in connection with
     this litigation. In any event, there are no factual allegations clearly pertaining to Quality aside
25   from this vague reference to a "receipt," and plaintiff does not allege she requested such receipt,
     was entitled to such receipt, or suffered any damages as a result of Quality's alleged failure to
26   provide such a receipt.

1    action" (id. at 7 (citing California Civil Code § 2924)), and the FAC seeks to "set aside

2    foreclosure" and "discharge of the original fraudulent loan," along with seeking $2,610,000.00 in

3    damages.  (Id. at 1-2, 11.)

4              Aside from defendant's alleged failure to involve a court prior to foreclosure, the

5    FAC also alleges that the foreclosure process and trustee's sale were improper for a separate

6    reason: plaintiff's alleged tender of loan repayment to defendant, which allegedly satisfied her

7    obligations under her loan prior to foreclosure.  Specifically, the FAC alleges that "[o]n or about

8    November 6, 2009[,] under the terms of a private agreement between Plaintiff and a third party, a

9    Bonded Promissory Note was conveyed by said third party" to defendant, that defendant received

10   that Bonded Promissory Note (the "BPN") on June 8, 2008, and that because defendant "failed to

11   return" such bonded promissory note to plaintiff, plaintiff's obligations for the "above referenced

12   loan" were "fully satisfied."  (Id. at 6.)

13             While the allegations are unclear, the FAC also appears to suggest that plaintiff's

14   alleged loan was funded by monies defendants created "out of thin air," and that defendant's

15   failure to inform her of this alleged source of her loan funds effectively voids the loan agreement

16   and amounts to a "non-disclosure contrary to the requirements of the federal Truth in Lending

17   Act ("TILA") and the Real Estate Settlement Procedures Act ("RESPA") . . . ."  (Id. at 10-13.)

18             The FAC also alleges that defendant's foreclosure was done with a "lack of

19   constitutional due process of law."  (Id. at 7.)  While the allegations are again unclear, the FAC

20   also appears to allege that defendant is a corporation existing under the laws of the State of

21   California, that "[s]uch State of California and all corporate subdivisions thereof, which is

22   inclusive of all Defendants herein, are considered and act as Federal corporations . . ." and as a

23   "federal corporation," defendant allegedly can be liable for depriving plaintiff of "her Rights

24   under Due Process" of law to free enjoyment of land.  (Id. at 15.)

25             Finally, perhaps overlooking the fact that plaintiff herself crafted the pleading and

26   is charged with naming the defendants, the FAC also rather confusingly discusses the "real party

4

in interest" that "should have been named as defendants" (id. at 17-18) and lists "the City of London Corporation, The House of Windsor, The Vatican or other unnamed and unrevealed parties." (Id. at 17.)

In its pending motion, defendant again seeks to dismiss the FAC for failure to state a claim.[3]  Defendant makes several arguments challenging the sufficiency of the FAC. First, defendant argues that the facts, as pleaded, do not demonstrate that plaintiff is entitled to relief.  Defendant avers that: (1) plaintiff fails to plead a valid "tender" of her debt because, as a matter of law, the form of payment allegedly tendered by plaintiff — the BPN — is not an acceptable form of payment and thus that the Deed of Trust was properly foreclosed upon; and (2) as a matter of law, nonjudicial foreclosure proceedings need not be preceded by judicial determinations of note ownership.  Defendant also argues that plaintiff failed to plead facts supporting claims for fraud and violation of the TILA.   Defendant argues that plaintiff has not pleaded facts sufficient to show entitlement to the over $2 million in damages she alleges, and that the FAC fails to comply with minimal pleading standards.  (Dkt. No. 30-1.)

Defendant confirms that plaintiff borrowed $597,400.00 under a promissory note to purchase a home located in Lathrop, California.  (RJN, Exh. A.)  Defendant contends that in 2008, plaintiff breached her promise to repay the indebtedness.[4]  (Id.)  Nonjudicial foreclosure proceedings commenced, and the subject property was sold at public auction on July 29, 2009. (RJN, Exh. E.)  On December 17, 2009, a Trustee's Deed Upon Sale was recorded in favor of defendant in the San Joaquin County Recorder's Office.  (Id.)

Along with dismissal of the action, defendant also seeks an order of this court expunging a lis pendens plaintiff placed on the subject real property.  (Dkt. No. 32.)  From the

---

[3]  In support of its motions to dismiss and to expunge lis pendens, defendant requests judicial notice of exhibits, all of which are records of the San Joaquin County Recorder's office. (Dkt. Nos. 30-2; 32-3.)  These materials are judicially noticeable and therefore this request is granted. Fed. R. Evid. 201; Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

[4]  The FAC is silent on the issue of whether plaintiff ever defaulted on her loan payments.

5

1   documents attached to defendant's request for judicial notice in support of the motion to expunge

2   (Dkt. No. 32-3), it appears that plaintiff recorded the lis pendens with the San Joaquin County

3   Recorder's office on October 30, 2009.  (Dkt. No. 32-3, Exh. F (a Notice of Pendency of Action

4   recorded October 30, 2009).)  Plaintiff stated in the lis pendens that the amount at issue was

5   $2,610,000.00 and that she sought to impose an equitable lien over the real property.  (Id.)

6   Defendant seeks attorneys' fees and costs in the amount of $1,250.00 (Dkt. No. 32-2 at 2), which

7   may be recovered by a party prevailing on an expungement motion where a lis pendens was

8   recorded without "substantial justification."  (Dkt. No. 32-1 at 12.)

9         In her opposition to defendant's motions, plaintiff echoes the allegation in her

10  FAC that because defendant did not inform her that it created money "out of thin air," this failure

11  to inform signifies that there was "no Consideration" and thus "no CONTRACT" for her loan.

12  (Oppo., Dkt. No. 41 at 2.)   Plaintiff also contends that the entity who foreclosed on her home

13  had no right to do so, because plaintiff never "appoint[ed]" a trustee and thus "substitution of

14  QUALITY LOAN SERVICE CORPORATION as Trustee is void and null . . . ."  (Id.)[5]  Plaintiff

15  avers that a "Bonded Promissory Note" is "legal tender for all debts."  (Id.)  Plaintiff states that

16  she opposes the motion to expunge her lis pendens and request for attorneys' fees, but cites no

17  authorities supporting her position. (Id.)

18  II.   MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

19         A.   Legal Standard for a Motion to Dismiss

20         A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

21  challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

22  Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).   Under the "notice pleading" standard

23  of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

24  plain statement" of the claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see also

25  _____

26         [5]  This allegation is absent from the FAC.

1   Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  The complaint must give a defendant

2   "fair notice of what the claim is and the grounds upon which it rests."  Bell Atlantic Corp. v.

3   Twombly, 550 U.S. 544, 555 (2007) (internal quotations and modification omitted).

4           On a motion to dismiss, the court construes the pleading in the light most

5   favorable to the plaintiff and resolves all doubts in the plaintiff's favor.[6]  Corrie v. Caterpiller,

6   503 F.3d 974, 977 (9th Cir. 2007); Parks School of Business, Inc. v. Symington, 51 F.3d 1480,

7   1484 (9th Cir. 1995).  The complaint's factual allegations are accepted as true.  Church of

8   Scientology of Cal. v. Flynn, 744 F.2d 694, 696 (9th Cir. 1984).  In order to survive dismissal for

9   failure to state a claim pursuant to Rule 12(b)(6), however, a complaint must contain more than a

10  "formulaic recitation of the elements of a cause of action;" it must contain factual allegations

11  sufficient to "raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly,

12  550 U.S. 544, 545 (2007).  Factually unsupported claims framed as legal conclusions, and mere

13  recitations of the legal elements of a claim, do not give rise to a cognizable claim for relief.

14  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-51 (2009) (holding that Rule 8 "demands more than an

15  unadorned, the defendant-unlawfully-harmed-me-accusation").

16          Iqbal and Twombly describe a two-step process for evaluation of motions to

17  dismiss.  The court first identifies the non-conclusory factual allegations, and the court then

18  determines whether these allegations, taken as true and construed in the light most favorable to

19

20          [6]  Pro se pleadings are typically held to a less stringent standard than those drafted by
    lawyers.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  "[A] pro se complaint, however
21  inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by
    lawyers."  Erickson v. Parduc, 551 U.S. 89 (2007).  So-called "inartful pleading" by parties
22  appearing pro se should not penalize a pro se litigant, particularly in civil rights actions.
    Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002); Johnson v. State of Calif., 207 F.3d 650,
23  653 (9th Cir. 2000).  With respect to pleadings by pro se parties, the court must construe such a
    pleading liberally to determine if it states a claim and, prior to dismissal, tell a plaintiff of
24  deficiencies in her complaint and give plaintiff an opportunity to cure them if it appears at all
    possible that the plaintiff can correct the defect.  See Lopez v. Smith, 203 F.3d 1122, 1130-31
25  (9th Cir. 2000) (en banc).  In this case, the undersigned has already advised plaintiff of the
    various deficiencies in her pleading and has given her the opportunity to amend the pleading.
26  (Dkt. No. 28.)  Similarly, when plaintiff failed to timely oppose the pending motion to dismiss,
    the undersigned gave plaintiff additional time to file an opposition.  (Dkt. No.  39.)

1   the plaintiff, "plausibly give rise to an entitlement to relief." Iqbal, 129 S. Ct. at 1949-50.

2          "A complaint may survive a motion to dismiss if, taking all well-pleaded factual

3   allegations as true, it contains 'enough facts to state a claim to relief that is plausible on its

4   face.'" Coto Settlement v. Eisenberg, 593 F.3d 1031, 1034 (9th Cir. 2010). "'A claim has facial

5   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

6   inference that the defendant is liable for the misconduct alleged.'" Caviness v. Horizon Cmty.

7   Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1949).

8          "Plausibility," as it is used in Twombly and Iqbal, does not refer to the likelihood

9   that a pleader will succeed in proving the allegations.  Instead, it refers to whether the

10  non-conclusory factual allegations, when assumed to be true, "allow[] the court to draw the

11  reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at

12  1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

13  than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S.

14  at 557).  A complaint may fail to show a right to relief either by lacking a cognizable legal theory

15  or by lacking sufficient facts alleged under a cognizable legal theory.  Balistreri v. Pacifica Police

16  Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  Only where a plaintiff has failed to "nudge [his or her]

17  claims across the line from conceivable to plausible," is the complaint properly dismissed.

18  Iqbal, 129 S. Ct. at 1951-52.  While the plausibility requirement is not akin to a probability

19  requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully."

20  Id. at 1949; accord Twombly, 550 U.S. at 556.  This plausibility inquiry is "a context-specific

21  task that requires the reviewing court to draw on its judicial experience and common sense." Id.

22  at 1950.

23          In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may

24  generally consider only allegations contained in the pleadings, exhibits attached to the complaint,

25  and matters properly subject to judicial notice." Outdoor Media Group, Inc. v. City of

26

8

1   Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).[7]  However,

2   under the "incorporation by reference" doctrine, a court may also review documents "whose

3   contents are alleged in a complaint and whose authenticity no party questions, but which are not

4   physically attached to the [plaintiff's] pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th

5   Cir. 2005) (citation omitted and modification in original).  The incorporation by reference

6   doctrine also applies "to situations in which the plaintiff's claim depends on the contents of a

7   document, the defendant attaches the document to its motion to dismiss, and the parties do not

8   dispute the authenticity of the document, even though the plaintiff does not explicitly allege the

9   contents of that document in the complaint." Id.

10              B.      Legal Standard for a Motion to Expunge Lis Pendens

11              A lis pendens must be based on an action that asserts a "real property claim." Cal.

12   Civ. Proc. Code §§ 405.20, 405.31.  A "real property claim" is an action that affects title to, or

13   right to possession of, real property, or use of an easement identified in the pleading.  Cal. Civ.

14   Proc. Code § 405.4; American National Red Cross v. United Way California Capital Region, No.

15   CIV. S-07-1236 WBS DAD, 2007 WL 4522967, at *3 (E.D. Cal. Dec. 19, 2007) (not reported)

16   ("To determine if plaintiff asserts a real property claim, the court looks only to plaintiff's

17   pleading.  [Citation.]  A claim that seeks an actual interest in the property or that 'affects

18   ownership of the disputed property' is a real property claim.") (emphasis added) (citing Campbell

19   v. Superior Court, 132 Cal. App. 4th 904, 913 (2005); Kirkeby v. Superior Court, 33 Cal. 4th

20   642, 648-49 (2004).)

21              A lis pendens shall be expunged if the court finds either that the pleading on

22   which the notice is based does not contain a real property claim, or that the claimant failed to

23   ───────────────────

24       [7]  "The court need not, however, accept as true allegations that contradict matters properly
     subject to judicial notice or by exhibit." Sprewell v. Golden State Warriors, 266 F.3d 979, 988
     (9th Cir. 2001) as amended by 275 F.3d 1187 (9th Cir. 2001); accord Makua v. Gates, No.

25   09-00369 SOM/LEK, 2009 WL 3923327, at *3 (D. Haw. Nov. 19, 2009) (not reported) (". . . the
     court need not accept as true allegations that contradict matters properly subject to judicial notice

26   or allegations contradicting the exhibits attached to the complaint.") (citing Sprewell).

9

1  establish by a preponderance of the evidence the probable validity of the real property claim.

2  Cal. Civ. Proc. Code §§ 405.31, 405.32; e.g., Fried v. Washington Mut. Bank, No. C 09-1049

3  SBA, 2010 WL 4689580, at *2 (N.D. Cal. Nov. 9, 2010) (not reported).  It follows that a court

4  must order a lis pendens expunged after the court dismisses the action entirely.  E.g., Fried, 2010

5  WL 4689580, at *2 (ordering expungement of lis pendens after the court "dismissed the

6  underlying action, leaving Plaintiff without a real property claim . . . .").  A motion for

7  expungement may be brought at any time after notice of pendency has been recorded.  Cal. Civ.

8  Pro. Code § 405.30.  The party who recorded the notice of lis pendens bears the burden of proof

9  in opposing expungement.  Id.

10  B.    DISCUSSION

11           A.    Motion to Dismiss

12           As a preliminary matter, the undersigned clarifies that the only pleading presently

13  before it is the FAC.[8]  Allegations raised in plaintiff's opposition but absent from the FAC — for

14  instance, the theory that Quality Loan Service Corporation had "no right" to foreclose because

15  plaintiff herself never appointed a trustee (Dkt. No. 41 at 2) —  are not part of the operative

16  pleading and are not sufficient to correct for factual deficiencies within the FAC.  Nonetheless,

17  the undersigned analyzes this allegation below to determine whether its inclusion in an amended

18  pleading might salvage an otherwise deficient claim.

19           1.    The First Claim For Relief: "Due Process" and Wrongful Foreclosure

20           Plaintiff alleges that defendant denied her of her "Constitutional Substantive

21  Rights of Due Process."  (FAC at 6-9 (referencing the "Fifth Amendment").)   For the reasons

22  described below, plaintiff's "due process" claim fails as a matter of law.

23           Also, as pleaded the first claim for relief appears to include a claim for wrongful

24

25           [8]  The court recognizes that plaintiff has previously attached to her filings an amended
complaint that she apparently filed in San Joaquin Superior Court on January 13, 2010.  (Dkt.
No. 25 at 4-6.)  However, that amended complaint is not before this court.  Further, the court

26  notes that it suffers from the same deficiencies as the original complaint.

1   foreclosure.  (Id. at 7.)  For the reasons described below, plaintiff fails to plead facts sufficient to

2   support a "wrongful foreclosure" claim.  The undersigned recommends dismissal of both claims

3   with prejudice.

4              a.     Due Process

5              Plaintiff has not pleaded facts sufficient to support a constitutional due process

6   claim against defendant, a private business entity described as an "LLC" and "organized and

7   existing under the laws of the State of California."  (FAC at 1, 15.)  The FAC references the

8   "Fifth Amendment" (FAC at 7), but the nature of the due process claim plaintiff intends to assert

9   is unclear.  Regardless, as described below, plaintiff has failed to plead facts sufficient to support

10  a due process claim under either the Fifth Amendment or the Fourteenth Amendment to the

11  Constitution.

12             "The Fifth Amendment prohibits the federal government from depriving persons

13  of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due

14  process by the several States . . . ."  Castillo v. McFadden, 399 F.3d 993, 1002 n.5 (9th Cir.

15  2005).  The Ninth Circuit Court of Appeals has explained that "[t]he Due Process Clause of the

16  Fifth Amendment . . . [applies] only to actions of the federal government — not to those of state

17  or local governments."  Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001); see also

18  Bingue v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008) ("The Fifth Amendment's due process

19  clause only applies to the federal government.").  Similarly, those acting under color of state law

20  can be liable for constitutional violations such as the deprivation of due process rights.  Long v.

21  County of L.A., 442 F.3d 1178, 1185 (9th Cir. 2006) (citing West v. Atkins, 487 U.S. 42, 48

22  (1988)); accord Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 624 (9th Cir. 1988).

23             While private entities may be liable  for constitutional violations under certain[9]

24  

25         [9]  E.g., Fonda v. Gray, 707 F.2d 435, 437-38 (9th Cir. 1983); Lopez v. Dept. of Health
    Services, 939 F.2d 881, 883 (9th Cir. 1991) (citing cases and describing the "joint action test"
26  and the "governmental nexus test".)

1  circumstances, a private entity's alleged constitutional violations do not provide a plaintiff with a

2  constitutional cause of action against the entity unless it acted under color of state law.  E.g.,

3  Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 936-40 (1982).  Thus, the only way to proceed

4  with an action against a private business for violations of the Constitution is to show that the

5  entity's actions were fairly attributable to the federal or state government.  Id. at 936; Mathis v.

6  Pacific Gas and Elec. Co., 75 F.3d 498, 502 (9th Cir. 1996).

7          To the extent plaintiff intends to allege that defendant's mere invocation of the

8  nonjudicial foreclosure procedure amounts to "state action" because the procedure is done under

9  the auspices of state law, the Ninth Circuit Court of Appeals has rejected that theory.  It is

10  well-settled law that non-judicial foreclosure proceedings do not involve "state action," even

11  though such proceedings are regulated by state law.  Apao v. Bank of New York, 324 F.3d 1091

12  (9th Cir. 2003), cert. denied, 540 U.S. 948; accord Geist v. California Reconveyance Co., No. C

13  10-0367 CRB, 2010 WL 1999854, at *1-3 (N.D. Cal. May 18, 2010) (not reported) (applying

14  Apao, holding that use of California's nonjudicial foreclosure procedures does not qualify as

15  "state action," and dismissing the plaintiff's Fourteenth Amendment due process claim).

16          Here, plaintiff's "due process" claim and the allegations supporting it are unclear,

17  but the FAC neither alleges facts suggesting defendant acted under color of state law, nor

18  includes facts sufficient to allege that defendant is a federal entity.  At most, the FAC

19  conclusorily suggests that because defendant is a corporation existing in California, defendant is

20  "considered and act[s] as" a "federal corporation."  (FAC at 15-16).  Plaintiff does not plead any

21  facts plausibly suggesting defendant's actions toward plaintiff were fairly attributable to the

22  federal or state government. Accordingly, the undersigned recommends that defendant's motion

23  to dismiss be granted, and the claim for "Constitutional Substantive Rights of Due Process" be

24  dismissed.  Because plaintiff gives no indication in her opposition (Dkt. No. 41) of any ability to

25  amend her pleading to include facts supporting defendant's liability for a constitutional due

26  process claim, and because plaintiff has already received the opportunity to amend her pleading

1   in this action, the undersigned recommends that plaintiff's constitutional "due process" claim be

2   dismissed with prejudice.

3             b.     Wrongful Foreclosure

4          Buried within plaintiff's first claim for relief appears to be a claim for wrongful

5   foreclosure.[10] (FAC at 7.)  The facts supporting plaintiff's wrongful foreclosure claim are,

6   apparently, that defendant allegedly foreclosed and sold the subject property at a trustee's sale

7   without first obtaining "a judicial determination of the status of said Defendant as the owner of

8   the subject property" (id.), and without first providing evidence of "any actual cost they allegedly

9   paid for their interest in the subject loan."  (Id. at 5.)  Plaintiff cites to California Civil Code §

10   2924.  (FAC at 7.)  In response, defendant argues that plaintiff's allegations do not state a claim

11   because, as a matter of law, "additional steps, outside the statutory framework" of California

12   Civil Code §§ 2924-2924i are not required for a valid nonjudicial foreclosure.  (Dkt. No. 30-1 at

13   7-8.)  Defendant's arguments are well-taken.

14          California's statutory scheme governing non-judicial foreclosure is

15   comprehensive and intended to be exhaustive.  Moeller v. Lien, 25 Cal. App. 4th 822, 834

16   (1994); accord Marty v. Wells Fargo Bank, No. CIV S–10–0555 GEB DAD PS, 2011 WL

17   1103405 at *4 (E.D. Cal. Mar. 22, 2011) (not reported) (same).  "Financing or refinancing of real

18   property is generally accomplished in California through a deed of trust.  The borrower (trustor)

19   executes a promissory note and deed of trust, thereby transferring an interest in the property to

20   the lender (beneficiary) as security for repayment of the loan."  Marty, 2011 WL 1103405 at *4

21   (quoting Bartold v. Glendale Federal Bank, 81 Cal. App. 4th 816, 821 (2000).)  A deed of trust

22   "entitles the lender to reach some asset of the debtor if the note is not paid."  Id. (quoting

23   Alliance Mortgage Co. v. Rothwell, 10 Cal. 4th 1226, 1235 (1995).)  "Upon default by the trustor,

24

25          [10] Where defendants have fair notice of the nature of the *claim*, the complaint need not

26   even allege the legal theory on which recovery is being sought.  Crull v. GEM Ins. Co., 58 F.3d
     1386, 1391 (9th Cir. 1995).

1  the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale." Id.

2  (quoting Moeller, 25 Cal. App. 4th at 830).

3                    (i)      "Judicial Determination" of Ownership Prior to Nonjudicial Foreclosure

4                    Contrary to plaintiff's framing, California Civil Code § 2924 ("Section 2924")

5  does not require a "judicial determination" of ownership as a prerequisite to invoking nonjudicial

6  foreclosure procedures.  Where a deed of trust contains an "express provision granting a power of

7  sale," the beneficiary may pursue non-judicial foreclosure, commonly referred to as a trustee's

8  sale, under Section 2924. Ung v. Koehler, 135 Cal. App. 4th 186, 192 (2005); accord Rosenfeld

9  v. JPMorgan Chase Bank, N.A.,732 F. Supp. 2d 952, 963 (N.D. Cal. 2010) (granting motion to

10 dismiss plaintiff's wrongful foreclosure claim without leave to amend because plaintiff failed to

11 allege facts suggesting that the trustee under the first deed of trust did not act as the authorized

12 agent of the beneficiary when it recorded the notice of default); accord Pantoja v. Countrywide

13 Home Loans, Inc., 640 F. Supp. 2d 1177, 1188-89 (N.D. Cal. 2009).

14                    As defendant correctly argues, "a trustee, mortgagee, beneficiary, or any of their

15 authorized agents" may institute the non-judicial foreclosure process.  See Cal. Civ. Code §

16 2924(a)(1); accord Saldate v. Wilshire Credit Corp., 711 F. Supp. 2d 1126, 1139 (E.D. Cal.

17 2010); Cantu v. CitiMortgage, Inc., No. CV F 10-2334 LJO GSA, 2010 WL 5394777, at *8 (E.D.

18 Cal. Dec. 21, 2010) (not reported) ("Under California Civil Code section 2924(a)(1), a 'trustee,

19 mortgagee or beneficiary or any of their authorized agents' may conduct the foreclosure

20 process.").  Moreover, under California Civil Code § 2924b(4), a "person authorized to record

21 the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an

22 agent of the named trustee, any person designated in an executed substitution of trustee, or an

23 agent of that substituted trustee." Saldate, 711 F. Supp. 2d at 1139.

24                    Here, the power-of-sale clause is included on the third page of plaintiff's deed of

25 trust.  (RJN, Exh. A at 3.)  Plaintiff's deed of trust confers the "power of sale" upon the Trustee.

26 (Id.)  The deed of trust identifies First American Title as the Trustee, plaintiff as the Borrower,

1   MTH Mortgage, LLC as the Lender, and Mortgage Electronic Registration Systems, Inc.

2   ("MERS") as the Beneficiary and nominee of the Lender.  (Id. at 1-2.)  The document also

3   expressly gives the Lender the option to substitute a "successor trustee" by recording the

4   substitution with the county recorder.  (Id. at 13.)

5          The judicially noticed documents confirm that, as the "authorized agent" for

6   MERS (the Beneficiary), Quality issued the Notice of Default.[11]  (RJN, Exh. B.)  Thereafter,

7   MERS, as the nominee of the Lender, recorded such a substitution and designated Quality as the

8   substituted Trustee, replacing First American Title.  (RJN, Exh. C at 1-2.)  Quality gave notice of

9   the Trustee's Sale.  (RJN, Exh. D.)  Thereafter, Quality, as Trustee, granted its interest in the

10  deed of trust to defendant Aurora in the Trustee's Deed Upon Sale.  (RJN, Exh. E.)

11         Accordingly, because the deed of trust expressly conferred the "power of sale"

12  upon the Trustee, plaintiff's argument that defendant's foreclosure should have been preceded by

13  "a judicial determination of the status of said Defendant as the owner of the subject property"

14  (FAC at 5) fails as a matter of law.  E.g., Rosenfeld, 732 F. Supp. 2d at 963 (holding that the

15  "power of sale" clause in the deed of trust rendered deficient plaintiff's claim of improprieties in

16  "assignment, transfer, and exercise of the power of sale" that plaintiff alleged resulted in

17  foreclosure by an entity "not properly appointed or authorized" to foreclose).  No "judicial

18  determination" was necessary, as plaintiff's signature on the deed of trust confirms her approval

19  of the "power of sale" clause and approval of a nonjudicial foreclosure in the event of her default.

20  See id.  Moreover, plaintiff has not alleged facts suggesting that defendant was not actually the

21

22         [11]  Under California law, a "trustee, mortgagee, or beneficiary or any of their authorized
    agents" may conduct the foreclosure process, and "a person authorized to record the notice of
23  default or the notice of sale shall include an agent for the mortgagee or beneficiary, an agent of
    the named trustee, any person designated in an executed substitution of trustee, or an agent of
24  that substituted trustee."  Cal. Civ. Code §§ 2924(a)(1), (b)(4); accord Pantoja, 640 F. Supp. 2d at
    1189-90.  Further, "the California Civil Code expressly permits trustees to wait and record a
25  substitution of trustee until after a notice of default has been recorded."  Reynoso v. Paul
    Financial, LLC, No. 09–3225 SC, 2009 WL 3833298, at *3 (N.D. Cal. Nov. 16, 2009) (not
26  reported); accord Marty v. Wells Fargo Bank, No. CIV S–10–0555 GEB DAD PS, 2011 WL
    1103405, at *4 (E.D. Cal. Mar. 22, 2011) (not reported).

1    true Trustee or that the Deed Upon Sale was otherwise invalid.  (RJN, Exh. E.)  Accordingly, in

2    light of the "power of sale" clause in plaintiff' deed of trust (RJN, Exh. A), the FAC's allegation

3    that defendant failed include a "judicial determination" of defendant's interest in the subject

4    property prior to the Trustee's Sale does not support a wrongful foreclosure claim.

5           (ii)    Producing "Evidence" of Interest Prior to Nonjudicial Foreclosure

6           The FAC also appears to allege that the foreclosure and Trustee's Sale were

7    improper because defendant conducted the Trustee's Sale without first providing any evidence of

8    "any actual cost they allegedly paid for their interest in the subject loan."  (FAC at 5.)  As

9    discussed above, the terms of the applicable deed of trust does not require the presentation of

10   such "actual cost" or "evidence" either before or during the nonjudicial foreclosure process.

11   (RJN, Exh. A.)  To the extent the FAC can be read to allege that the "evidence" defendant was

12   obligated to produce was the original promissory note, the argument has been repeatedly rejected

13   by courts within this circuit.  See e.g., Hafiz v. Greenpoint Mortg. Funding, Inc., 652 F. Supp. 2d

14   1039, 1043 (N.D. Cal. 2009) (holding that "California law does not require possession of the

15   note as a precondition to non-judicial foreclosure under a deed of trust . . . . Pursuant to section

16   2924(a)(1) of the California Civil Code, the trustee of a Deed of Trust has the right to initiate the

17   foreclosure process.  Production of the original note is not required to proceed with a non-judicial

18   foreclosure.") (citing Pagtalunan v. Reunion Mortgage Inc., No. C-09-00162 EDL, 2009 WL

19   961995, at *1 (N.D. Cal. April 8, 2009) (not reported); Lomboy v. SCME Mortg. Bankers, No.

20   C-09-1160 SC, 2009 WL 1457738, at *5 (N.D. Cal. May 26, 2009) (not reported)).  Accordingly,

21   the FAC's allegation that defendant was obligated to produce "evidence" of an interest in the

22   subject property prior to the Trustee's Sale does not support a wrongful foreclosure claim.

23          (iii)   Consent to "Appoint[ed]" Trustee Prior to Nonjudicial Foreclosure

24          Plaintiff argues in her opposition that defendant lacked standing to foreclose

25   under the language of the deed of trust because plaintiff never consented to the substitution of

26   defendant as trustee or "appoint[ed]" defendant as trustee.  (Oppo. at 2.)  The FAC itself does not

1   include this allegation, and it is not technically before the undersigned.

2         Regardless, even if the FAC were amended to include the allegation, the terms of

3   the deed of trust do not require that plaintiff herself "appoint" a trustee (RJN, Exh. 1) and do not

4   require that plaintiff consent to the "appointing" of a trustee or substitute trustee.  See Pantoja,

5   640 F. Supp. 2d at 1190 & n.15 (and cases cited therein) (holding that pursuant to the terms of

6   the deed of trust and California Civil Code § 2924, MERS had a right to conduct the foreclosure

7   process); accord Germon v. BAC Home Loans Servicing, L.P., No. 10cv2482 BTM(POR), 2011

8   WL 719591, at *2 (S.D. Cal. Feb. 22, 2011) (not reported); Wurtzberger v. Resmae Mortgage

9   Corp., No. 2:09-cv-01718-GEB-DAD, 2010 WL 1779972, at *3-4 (E.D. Cal. April 29, 2010)

10   (not reported) (explaining that since the deed of trust named MERS as the beneficiary, MERS

11   had the right to foreclose and the authority to assign its beneficial interest under the deed of

12   trust).  California law permits a beneficiary to make a substitution of trustee and grant the power

13   to foreclose, and the substituted trustee need not produce the note prior to the nonjudicial

14   foreclosure.  Hafiz, 652 F. Supp. 2d at 1043 (citing Kachlon v. Markowitz, 168 Cal. App. 4th

15   316, 334 (2008).)  Courts have also held that MERS has standing to foreclose as the nominee for

16   the lender and beneficiary of the Deed of Trust, *and* may assign its beneficial interest to another

17   party.  Lane v. Vitek Real Estate Industries Group, 713 F. Supp. 2d 1092, 1099-1100 (E.D. Cal.

18   2010) (collecting cases).

19         Plaintiff's unpleaded argument that she did not consent to or "appoint" defendant

20   as the substituted trustee does not support a wrongful foreclosure claim.  Aside from the legal

21   authorities above and the terms of the applicable deed of trust, plaintiff has not alleged any facts

22   suggesting defendant was not actually the trustee at the time of the Trustee's Sale, or that the Sale

23   was otherwise invalid. The FAC does not allege other facts suggesting the basis for a claim of

24   failure to comply with the statutory scheme governing non-judicial foreclosure in California,

25   such as, for instance, that plaintiff was denied proper notice of the Trustee's Sale.  Accordingly,

26   the undersigned recommends that defendant's motion to dismiss be granted and the wrongful

1   foreclosure claim be dismissed.  The undersigned recommends that the dismissal be with

2   prejudice, as plaintiff has already had an opportunity to amend her pleading, and because plaintiff

3   has not suggested any ability to amend her complaint to state additional facts that might support a

4   wrongful foreclosure claim.

5                    (iv)    Tender by "Bonded Promissory Note "

6                    While the undersigned recommends dismissal of the wrongful foreclosure claim

7   due to plaintiff's failure to plead factual allegations supporting the claim, plaintiff's failure to

8   plead a complete and valid "tender" constitutes a separate and additional ground for dismissing

9   her wrongful foreclosure claim.  Defendant argues that many of plaintiff's claims for relief

10  should be dismissed because plaintiff has not alleged that she tendered the full amount owed on

11  the loan prior to commencing her lawsuit.  (Dkt. No. 30-1 at 4-5.)  The argument is well-taken.

12  Plaintiff alleges that she made "tender" of her indebtedness when she provided defendant with a

13  BPN, which she claims serves legal tender for her obligations under the loan.  (FAC at 5-6.)  As

14  described below, however, a BPN is not a valid tender as a matter of law.

15                   To the extent that plaintiff seeks to set aside the Trustee's Sale due to procedural

16  irregularities surrounding it, such claims fail because plaintiff has not alleged a valid tender of

17  her indebtedness.  "Under California law, in an action to set aside a trustee's sale, a plaintiff must

18  demonstrate that he has made a valid and viable tender [offer] of payment of the indebtedness."

19  Pantoja, 640 F. Supp. 2d at 1183-84 (citations and quotation marks omitted); see also Alcaraz v.

20  Wachovia Mortgage FSB, 592 F. Supp. 2d 1296, 1304 (E.D. Cal. 2009) ("'A valid and viable

21  tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale

22  under a deed of trust.'") (citing Karlsen v. Am. Sav. & Loan Ass'n, 15 Cal. App. 3d 112 (1971));

23  accord Quinteros v. Aurora Loan Services, 740 F. Supp. 2d 1163, 1169 (E.D. Cal. 2010).

24                   A tender must be one of full performance and must also be unconditional, and the

25  "giving of a note by a debtor for the amount of the debt does not constitute payment unless the

26  parties agree."  Arnolds Mgmt. Corp. v. Eischen, 158 Cal. App. 3d 575, 580 (1984); accord

1  Cantu, 2010 WL 5394777, at *4-5.  The California Court of Appeal has held that the tender rule

2  applies in an action to set aside a trustee's sale for irregularities in the sale notice or procedure

3  and has stated that "[t]he rationale behind the rule is that if plaintiffs could not have redeemed

4  the property had the sale procedures been proper, any irregularities in the sale did not result in

5  damages to the plaintiffs."  FPCI RE-HAB 01 v. E & G Invs., Ltd., 207 Cal. App. 3d 1018, 1021

6  (1989);  accord Cantu, 2010 WL 5394777, at *4-5.  Furthermore, a party must allege full tender

7  "in order to maintain any cause of action for irregularity in the sale procedure."  Abdallah v.

8  United Savs. Bank, 43 Cal. App. 4th 1101, 1109 (1996); see also Arnolds Mgmt. Corp., 158 Cal.

9  App. 3d at 579 ("A cause of action 'implicitly integrated' with the irregular sale fails unless the

10  trustor can allege and establish a valid tender" (citation omitted)).  This rule also generally

11  applies to a claim to cancel a voidable sale under a deed of trust.  See Karlsen, 15 Cal. App. 3d at

12  117 ("A valid and viable tender of payment of the indebtedness owing is essential to an action to

13  cancel a voidable sale under a deed of trust.");  accord Cantu, 2010 WL 5394777, at *4-5.

14         BPNs have been held to be "worthless" pieces of paper that, as a matter of law, do

15  not amount to "tender."  E.g., Bryant v. Wash. Mut. Bank, 524 F. Supp. 2d 753, 760-63 (W.D.

16  Va. 2007) (collecting cases).  As described in the undersigned's previous order (Dkt. No. 28)

17  dismissing plaintiff's original complaint with leave to amend, courts reaching this issue have

18  held BPNs not to be valid legal tender.  See id.; see also Tesi v. Chase Home Finance, LLC, No.

19  4:10-CV-272-Y, 2010 WL 2293177, at *6 (N.D. Tex. June 7, 2010) (not reported) (recognizing

20  that "bonds" similar to BPNs are patently "bogus" and "plainly devoid of value"); Maxwell v.

21  Chase Home Finance LLC, No. H-09-4038, 2010 WL 1426699, at *1-3 (S.D. Tex. April 7, 2010)

22  (not reported) (dismissing a complaint where plaintiff alleged only that the "property was paid

23  off with a bonded promissory note"); McElroy v. Chase Manhattan Mortgage Corp., 134 Cal.

24  App. 4th 388, 392-94 (2005) (dismissing wrongful foreclosure claim and holding that a "Bonded

25  Bill of Exchange Order" was "worthless on its face" and thus plaintiff failed to allege a proper

26  tender); Dinsmore-Thomas v. Ameriprise Financial, Inc., No. SACV 08-587 DOC (PLAx), 2009

19

1   WL 2431917, at *7-8 (C.D. Cal. Aug. 3, 2009) (not reported) (citing McElroy and holding that a

2   "failure to respond to worthless tenders does not appear to make an otherwise legitimate

3   foreclosure instead wrongful.").

4           Here, as in Tesi, plaintiff has "simply failed to allege any facts to show that [s]he

5   has legitimately tendered payment of the promissory note . . . ."[12]  Plaintiff failed to address any

6   authorities addressing BPNs (or similar notes or bonds) in her opposition.  (Dkt. No. 41.)

7   Further, even if a BPN could possibly serve as legal tender, in this case the judicially-noticed

8   deed of trust *expressly states* the forms of payment that will be accepted by the bank.  (RJN, Exh.

9   A at 4.)  A BPN is not listed as one of those acceptable payment forms.  (Id.)  Based on

10  judicially-noticed loan documents from which the claims in the FAC arise, then, the applicable

11  documents do not permit tender via BPN.  Accordingly, plaintiff's alleged attempt to "tender"

12  her debt is invalid as a matter of law.  Plaintiff's claims for wrongful foreclosure and request to

13  set aside the Trustee's Sale[13] fail to the extent they rest upon alleged procedural irregularities in

14

15           [12]  Defendant also brings to the plaintiff's and court's attention one case where an
    attorney was recently convicted along with several co-defendants of criminal fraud charges for
16  the passing of bills of exchanges, similar to the bonded promissory note alleged here.  (See Dkt.
    No. 30-1 at 10-12, citing cases).  Defendant references United States v. Lee, 427 F.3d 881, 885
17  (11th Cir. 2005), wherein the Eleventh Circuit affirmed a criminal conviction for a scheme to
    defraud and mail fraud, based in part upon a defendant's attempt to pass a promissory note to her
18  former bank.  Defendant cites to language from Bryant, 524 F. Supp. 2d at 762-63, where the
    judge stated: "I wish to offer plaintiff a word of caution . . . plaintiff has indicated that she has
19  attempted to pay other debts with Bills of Exchange and has alluded to a belief that there are
    similarly questionable means by which a person may avoid paying the federal income tax . . .
20  people frequently end up in prison for pursuing these sorts of schemes.  The convictions . . .
    should make abundantly clear that plaintiff is playing with fire."  The undersigned's previous
21  order advised plaintiff of these same authorities and informed her of the need to make the basis
    for her position regarding BPNs more apparent in any amended pleading.  (Dkt. No. 28.)  The
22  FAC's continued assertion of an alleged tender via a BPN (FAC at 5-7) and plaintiff's failure to
    address these authorities in her opposition in any way (Dkt. No. 41) confirms plaintiff cannot do
23  so.

24           [13]  Qureshi v. Countrywide Home Loans, Inc., No. C 09-4198 SBA, 2010 WL 841669, at
    *7 (N.D. Cal. Mar. 10, 2010) (not reported) ("A request to cancel a trustee's deed is a request for
25  a remedy as opposed to an independent cause of action."); Yazdanpanah v. Sacramento Valley
    Mortgage Group, No. C 09-02024 SBA, 2009 WL 4573381, at *6 (N.D. Cal. Dec. 1, 2009) (not
26  reported) ("A request to cancel the trustee's deed is 'dependent upon a substantive basis for

1   the foreclosure and trustees' sale of the subject property.  See, e.g., Ngoc Nguyen v. Wells Fargo

2   Bank, N.A., 749 F. Supp. 2d 1022, 1034-36 (N.D. Cal. 2010) (dismissing wrongful foreclosure

3   and quiet title claims for failure to allege proper tender); accord Garcia v. Wachovia Mortgage

4   Corp., 676 F. Supp. 2d 895, 914 (C.D. Cal. 2009) ("In order to allege a claim to quiet title,

5   Plaintiff must allege ability to tender the amounts admittedly borrowed.").

6            Plaintiff has already had the opportunity to amend her pleading and was

7   specifically informed of the deficiencies in her BPN allegation, but she failed to correct the

8   deficiencies.  Further, in her opposition (Dkt. No. 41) plaintiff did not meaningfully address

9   defendants' arguments regarding BPNs.  (Dkt. No. 30-1 at 4-7).  Plaintiff has demonstrated that

10   her BPN allegations cannot be cured by amendment.  Accordingly, the undersigned recommends

11   that defendant's motion to dismiss be granted, and that plaintiff's wrongful foreclosure claim and

12   request to set aside the trustee's sale be dismissed with prejudice.

13            2.     The Second Claim For Relief: "Bank Fraud," TILA, and RESPA

14            Plaintiff's second claim for relief is entitled "Bank Fraud," and, as pleaded,

15   appears to include claims for alleged violations of TILA and RESPA based on "non-disclosure"

16   of information relating to plaintiff's loan funds.  (FAC at 9-13.)  While the allegations are

17   unclear, the factual allegations underlying plaintiff's "Bank Fraud" claim appear to be that

18   plaintiff's alleged loan was funded by "banking wizardry" (FAC at 6), monies created "out of

19   thin air," and that defendant's failure to inform her of such alleged funding voids the loan

20   agreement and amounts to a "non-disclosure contrary to the requirements of the federal Truth in

21   Lending Act ("TILA") and the Real Estate Settlement Procedures Act ("RESPA") . . . ."  (Id. at

22

23   liability, [and it has] no separate viability.'") (modification in original) (quoting Glue-Fold, Inc.
     v. Slautterback Corp., 82 Cal. App. 4th 1018, 1023 n.3 (2000)).  Because the undersigned has

24   recommended that plaintiff's other claims for relief should be dismissed, plaintiff's request to set
     aside the Trustee's Sale should be dismissed as well.  Sanchez v. U.S. Bank, N.A., No. C

25   09-04506 SI, 2010 WL 670632, at *5 (N.D. Cal. Feb. 22, 2010) (not reported) (dismissing
     plaintiff's claim for cancellation where allegations in support of that claim were the same

26   allegations related to the claims that the court had determined failed to state a claim).

10-13.)  Plaintiff's "thin air" allegations appear intended to support claims for fraud, a claim that

her loan agreement is void, and claims for TILA violations and RESPA violations.

Defendant argues that, insofar as the FAC appears "to allege fraud at the

origination of the loan" (Dkt. No. 30-1 at 8), the allegations supporting the claim are not pleaded

with sufficient particularity under Federal Rule of Civil Procedure 9(b).  Defendant's argument is

well-taken.  Indeed, the only supporting allegations appear to be that defendant never informed

plaintiff that her loan was funded with monies created "out of thin air." (FAC at 6, 10-13.)

a)      Fraud

Plaintiff's allegations are not sufficient to give defendant notice of the particular

misconduct ascribed to it.  Rule 9(b) requires plaintiffs to differentiate between the conduct of

each defendant and "inform each defendant separately of the allegations surrounding his alleged

participation in the fraud."  Swartz v. KMPG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007).  The

FAC does not plead in detail the "time, place, and manner of each act of fraud, plus the role of

each defendant in each scheme."  See Cleveland v. Deutsche Bank Nat'l Trust Co., No. 08-cv-

0802 JM(NLS), 2009 U.S. Dist. LEXIS 7165, at *8 (S.D. Cal. Feb. 2, 2009) (quoting Lancasater

Community Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d 397, 405 (9th Cir. 1991).)   Bly-

Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (citations and internal quotations

omitted.)  While the allegations in the FAC are unclear, it seems that the plaintiff alleges that

defendant had the obligation to make certain disclosures to her at the commencement of her loan.

But the FAC does not clearly give defendant notice of the nature, time and place it was obligated

to provide the alleged disclosure, and accordingly does not give defendant notice of the particular

misconduct ascribed to it.

Further, while the FAC alleges that defendant "created" her loan funds from "thin

air" (FAC at 10-13), the FAC does not plead facts supporting each element of a claim for fraud

by defendant.  To determine if the elements of fraud have been sufficiently pleaded, the Court

looks to state law.  Kearns v. Ford Motor Co., 567 F.3d 1120, 1126 (9th Cir. 2009).  In

1    California, the elements of fraud are: (1) misrepresentation; (2) knowledge of falsity (scienter);

2    (3) intent to defraud (i.e., intent to induce reliance); (4) justifiable reliance; and (5) resulting

3    damage. Id.  Further, fraud must be pleaded with particularity. Fed. R. Civ. P. 9(b).  Vague or

4    conclusory allegations are insufficient to satisfy Rule 9(b)'s "particularity" requirement.  E.g.,

5    Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989).  The FAC does not

6    allege that defendant ever intended to defraud plaintiff.  The FAC does not allege facts indicating

7    that plaintiff justifiably relied on any alleged misrepresentations by defendant and/or any

8    nondisclosure about loan funds from "thin air."  The FAC does not allege that defendant played

9    any role in the origination of plaintiff's loan or that defendant had a duty to disclose anything

10   about the terms of the loan.  The judicially-noticed documents reflect that defendant was *not* a

11   party to the original loan agreement.  (RJN, Exh. A.)  The judicially-noticed documents confirm

12   that defendant did not participate in the origination of plaintiff's loan, and those documents

13   contradict plaintiff's allegations to the extent she suggests defendant had an obligation to

14   disclose any information about that loan prior to her signing it.  See Sprewell, 266 F.3d at 988, as

15   amended by 275 F.3d 1187 (9th Cir. 2001); accord Makua, 2009 WL 3923327, at *3.

16            Even if the FAC alleged facts suggesting that defendant was somehow involved in

17   the origination of plaintiff's loan and therefore had a duty to make certain disclosures about it,

18   the only "disclosure" plaintiff alleges she did not receive was a statement about the *source* of the

19   funds she received.  (FAC at 6, 10-13.)  Specifically, plaintiff believes that she should have been

20   told her loan was funded from monies created out of "thin air."  (FAC at 6).  In her opposition,

21   plaintiff cites no authorities suggesting that a lender — or a loan servicer like defendant —  must

22   undertake the complex and likely impossible task of disclosing to a borrower the various sources

23   of funds that will ultimately be involved in a given loan transaction.  Finally, even if there were

24   such a requirement, plaintiff has not alleged that the failure to disclose the source(s) of her loan

25   funds actually damaged her in any way: plaintiff admits she actually "received the proceeds from

26   said alleged loan."  (FAC at 5; see also RJN, Exh. A.)

1    Accordingly, plaintiff has not pleaded with particularity the basis of defendant's

2 alleged fraud in connection with nondisclosures, and plaintiff has not pleaded factual bases

3 required to satisfy each element of a fraud claim against defendant. See Fed. R. Civ. P. 9(b);

4 Lazar, 12 Cal. 4th at 638. The undersigned recommends that the motion to dismiss the fraud

5 claim be granted, and that the claim be dismissed. The undersigned recommends that the

6 dismissal be with prejudice, as plaintiff has already had the opportunity to amend her pleading,

7 and because plaintiff's opposition does not suggest any ability to add factual allegations that

8 might salvage this claim.

9     b) No Consideration for Loan Agreement

10   Plaintiff also appears to argue that, because her loan funds allegedly came from

11 "thin air," there was "no consideration" for her loan and the loan was a "void" contract. (FAC at

12 12.) Regardless of whether the loan funds came from "thin air" or elsewhere, the funds

13 ultimately ended up with plaintiff, and plaintiff used them to purchase the subject property.

14 (FAC at 5; RJN, Exh. A.) Plaintiff's suggestion that the loan agreement failed for lack of

15 consideration based on the alleged "thin air" source of the loan funds therefore fails. E.g.,

16 Sanchez v. U.S. Bank, N.A., No. C 09-04506 SI, 2010 WL 670632 at * 4-5 (N.D. Cal. Feb. 22,

17 2010) (not reported) (dismissing claim for "lack of consideration" because it was "apparent from

18 the face of the complaint and from the loan documents that plaintiff received the loan funds and

19 used them to purchase the subject property," and explaining that, under California contract law,

20 "good consideration" is defined as "[a]ny benefit conferred, or agreed to be conferred, upon the

21 promisor, by any other person, to which the promisor is not lawfully entitled.") (citing Cal. Civ.

22 Code § 1605.) On the pleaded facts, then, there is no clear connection between the alleged "thin

23 air" source of the loan funds and any alleged actual damages to plaintiff, and the alleged

24 nondisclosure does not support plaintiff's claim that her loan agreement should be deemed void

25 for lack of consideration.

26 ////

c)     TILA

The TILA provides that, in connection with a mortgage loan transaction, the borrower must be provided with certain disclosures regarding the costs and terms of the loan.  15 U.S.C. §§ 1601 et seq.; Yamamoto v. Bank of New York, 329 F.3d 1167, 1170 (9th Cir. 2003).  To the extent plaintiff alleges a TILA violation in connection with loan disclosures, plaintiff has not alleged that defendant had any involvement in her loan origination except for having "created" the loan funds from "thin air."  (FAC at 6, 10-13).  The judicially-noticed loan documents confirm defendant was not a party to the loan agreement.  (RJN, Exh. A.)

Plaintiff alleges that, although defendant was not a party to the loan agreement (RJN, Exh. A), defendant became obligated to make disclosures to plaintiff because defendant allegedly "created" the loan funds from thin air.  (FAC at 6, 10-13.)  But the FAC does not contain factual allegations describing the role(s) defendant played in the loan transaction or the basis for a duty to make disclosures to plaintiff.  As discussed above in relation to plaintiff's fraud claim, it is not clear that a lender's obligations under TILA would require the likely impossible task of tracing and disclosing the source(s) of funds that will be applied to a borrower's loan.  However, defendant does not advance this argument.[14]  Instead, defendant argues that even if plaintiff's allegations were sufficient to state a TILA claim, the claim is time-

---

[14]  TILA violations may be based upon, for instance, a failure to provide the disclosures required under 15 U.S.C. § 1631, or the failure to clearly and conspicuously disclose information relating to the "annual percentage rate" and the "finance charge" pursuant to 15 U.S.C. § 1632. Plaintiff alleges that the true "thin air" source of her loan funds were not disclosed to her (FAC at 6, 10-13), not that she was not informed about interest rates and charges applicable to her loan. Even if defendant somehow had an obligation to make loan-related disclosures to plaintiff, the *only* alleged nondisclosure is that the loan funds came from "thin air."  A failure to inform a borrower about the source of his or her loan funds is not clearly a failure to provide, for instance, a "meaningful disclosure of credit terms" applicable to the loan at issue.  15 U.S.C. § 1601(a). On the particular facts alleged here, failing to tell plaintiff the source of his or her loan funds may not be akin to, for instance, failing to "disclose potential risk factors that allow [the lender] to raise" interest rates governing loan repayment.  Barrer v. Chase, 566 F.3d 883, 885-86 (9th Cir. 2009.)  Regardless, the undersigned does not attempt to determine whether a failure to reveal the sources of loan funds amounts to nondisclosure under TILA as a matter of law, as defendant did not raise this argument.

25

1    barred by the statute of limitations.  (Dkt. No. 30-1 at 9-10.)  Defendant's argument is well-taken.

2                    i)        Damages Under TILA

3                    "TILA provides two private remedies: damages and rescission."  Shelley v.

4    Quality Loan Serv. Corp., No. SACV09-291 CJC (ANx), 2009 U.S. Dist. LEXIS 58156, at *5

5    (C.D. Cal. June 17, 2009) (not reported).  To recover damages arising from alleged TILA

6    violations, a plaintiff must file an action to recover damages "within one year from the date of the

7    occurrence of the violation."  15 U.S.C. § 1640(e).  In this case, plaintiff alleges that she

8    consummated the loan on or about March 30, 2007, and that around that time, defendant

9    "created" the loan funds from "thin air."  (FAC at 5-6, 10-13). The loan documents are dated

10   March 27, 2006.  (RJN, Exh. A.)  According to defendant, because plaintiff alleges that she was

11   not told of the "thin air" source of her loan funds at the time her loan was consummated — on or

12   about March 30, 2006 (FAC at 5) — plaintiff's one-year statute of limitation ran on or about

13   March 30, 2007.  Plaintiff did not file this suit until December 24, 2009.  (Dkt. No. 2, Exh. A

14   (original complaint filed in state court prior to defendant's removal).)  Accordingly, as plaintiff

15   did not bring the claim until December 24, 2009, more than one year has passed since the alleged

16   TILA violations arising from nondisclosure of the alleged source of the loan funds plaintiff

17   became entitled to on or about March 30, 2006, and the claim for damages under TILA is time-

18   barred.

19                   In certain circumstances, equitable tolling of the statute of limitations for civil

20   damages claims brought under TILA might be appropriate.  King v. State of California, 784 F.2d

21   910, 915 (9th Cir. 1986).  The doctrine of equitable tolling may be appropriate when the

22   imposition of the statute of limitations would be unjust or would frustrate TILA's purpose "to

23   assure a meaningful disclosure of credit terms so that the consumer will be able to . . . avoid the

24   uninformed use of credit."  Id. (quoting 15 U.S.C. § 1601(a)).  District courts, therefore, have the

25   discretion to evaluate specific claims of equitable tolling and adjust the limitations period

26   accordingly when the borrower may not have reasonable opportunity to discover the fraud or

                                                    26

1   nondisclosures that give rise to a TILA action.  Id.

2          Neither plaintiff's opposition nor her FAC suggests any basis for equitable tolling.

3   At most, in her opposition plaintiff concusorily states simply that she "did not know the

4   violations until on or [about] December 2009."  (Oppo. at 2.)  This broad statement does not

5   reveal how plaintiff came to know of the alleged violations, and she does not describe factual

6   bases leading up to the discovery of the alleged wrongdoing until four months *after* the Trustee's

7   Sale (RJN, Exh. E).  Likewise, the FAC does not allege any explanation as to why plaintiff could

8   not otherwise have discovered alleged TILA violations at the consummation of her loan.  "Such

9   factual underpinnings are all the more important . . . since the vast majority of [p]laintiff's]

10  alleged violations under TILA are violations that are self-apparent at the consummation of the

11  transaction."  Cervantes v. Countrywide Home Loans, Inc., No. CV 09-517-PHX-JAT, 2009 U.S.

12  Dist. LEXIS 87997, at *13-14 (D. Ariz. Sept. 24, 2009) (not reported) (holding that equitable

13  tolling was not appropriate when plaintiffs simply alleged that defendants "fraudulently

14  misrepresented and concealed the true facts related to the items subject to disclosure.").

15         Accordingly, because plaintiff has not pleaded any factual bases for equitable

16  tolling that might salvage her claim for damages under TILA (and does not suggest such facts in

17  her opposition), that doctrine does not apply and the TILA claim is time-barred.  E.g., Champlaie

18  v. BAC Home Loans Servicing, LP, 706 F. Supp. 2d 1029, 1052-53 (E.D. Cal. 2009) (where

19  plaintiff's TILA claim was based on the allegation that the required disclosures were not made

20  prior to completion of the loan transaction, the court dismissed the TILA claim and declined to

21  apply the equitable tolling doctrine because plaintiff had not "identified any potential barrier to

22  bringing suit on this issue prior to now"); Huynh v. Chase Manhattan Bank, 465 F.3d 992, 1104-

23  05 (9th Cir. 2006) (declining to apply equitable tolling where plaintiffs failed to allege that

24  "extraordinary circumstances" made it "impossible" to file claims on time); Valdez v. America's

25  Wholesale Lender, C 09-02778 JF (RS), 2009 U.S. Dist. LEXIS 118241, at *18-20 (N.D. Cal.

26  Dec. 18, 2009) (not reported) (dismissing TILA claim as time-barred where the pleading lacked

1   factual allegations sufficient to support application of equitable tolling where plaintiffs' "sole

2   assertion" was that the alleged violations came to their attention only after they consulted with

3   counsel); cf. Supermail Cargo Inc. v. United States, 68 F.3 1204, 1208 (9th Cir. 1995) (declining

4   to dismiss claim because plaintiff alleged facts demonstrating that plaintiff's "failure to discover

5   the [wrongdoing] earlier was not due to [plaintiff's] lack of diligence, but rather to the

6   [defendant]'s deliberate failure to provide [plaintiff] with accurate information.")

7               ii)      Rescission Under TILA

8               Defendant also argues that a claim for rescission arising from a failure to receive

9   material disclosures under TILA is time-barred because plaintiff's three-year statute of

10  limitations ran on or about March 27, 2009, and plaintiff did not file this suit until December 24,

11  2009.  15 U.S.C. § 1635(f).  Section 1635 has been held to "completely extinguish[] the right to

12  rescission at the end of the 3-year period."  Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412

13  (1998); accord Miguel v. Country Funding Corp., 309 F.3d 1161, 1164 (9th Cir. 2002)

14  ("[S]ection 1635(f) represents an 'absolute limitation on rescission actions' which bars any

15  claims filed more than three years after the consummation of the transaction.") (citing King v.

16  California, 784 F.2d 910, 913 (9th Cir.1986)).

17              A borrower has the right to rescind the loan transaction "until midnight of the

18  third business day following the consummation of the transaction or the delivery of the

19  information and rescission forms . . . together with a statement containing the material

20  disclosures."  15 U.S.C. § 1635(a).  However, where the required forms and disclosures have not

21  been delivered to the obligor, 15 U.S.C. § 1635(f) provides that "[a]n obligor's right of rescission

22  shall expire three years after the date of consummation of the transaction or upon the sale of the

23  property, whichever occurs first."  In this case, plaintiff alleges that she consummated the loan on

24  or about March 30, 2007, and that around that time, defendant "created" the loan funds from

25  "thin air."  (FAC at 5-6, 10-13).  Plaintiff's deed of trust (RJN, Exh. A) was executed on March

26  27, 2006, and plaintiff did not file her original complaint until December 24, 2009, almost nine

months after this three-year statute of limitations period ran.  Accordingly, the claim is time-barred.  As stated above, neither the FAC nor plaintiff's opposition reveal any factual bases for equitable tolling of her claim.  Plaintiff has already received the opportunity to amend her pleading, and her opposition does not suggest any ability to add factual allegations and amend her TILA claim.  Therefore, the undersigned recommends that the TILA claim be dismissed with prejudice.

Further, the Ninth Circuit has held that rescission under TILA "*should* be conditioned on repayment of the amounts advanced by the lender."  Yamamoto, 329 F. 3d at 1170 (emphasis in original).  District courts in this circuit have dismissed rescission claims under TILA at the pleading stage based upon the plaintiff's failure to allege an ability to tender loan proceeds.  See, e.g., Garza v. Am. Home Mortgage, No. CV F 08-1477 LJO GSA, 2009 U.S. Dist. LEXIS 7448, at *15 (E.D. Cal. Jan. 27, 2009) (not reported) (holding that "rescission is an empty remedy without [the borrower's] ability to pay back what she has received.") As discussed above in connection with plaintiff's deficient BPN allegations, plaintiff did not allege a valid tender repaying her loan.  Accordingly, the undersigned recommends that the claim for rescission under TILA be dismissed on the separate and additional grounds of plaintiff's failure to allege a valid tender.

d)     RESPA

Defendant does not squarely address the FAC's passing references to a RESPA violation.[15]  However, the statute of limitations arguments defendant proffered with respect to

---

[15]  While the FAC alleges that defendant violated RESPA due to nondisclosure of the source of her loan funding, 12 U.S.C. §§ 2601 et seq., and makes passing reference to that statute (e.g., FAC at 13), it is not clear that the FAC's factual allegations support a RESPA claim.  For instance, 12 U.S.C. § 2605 requires a loan servicer to provide disclosures relating to the assignment, sale, or transfer of loan servicing to a potential or actual borrower: (1) at the time of the loan application, and (2) at the time of transfer.  12 U.S.C. § 2605.  Plaintiff alleges that the true "thin air" source of her loan funds were not disclosed to her (FAC at 6, 10-13), not that she was not provided certain disclosures relating to the assignment, sale, or transfer of her loan servicing to a "potential or actual borrower."  Regardless, the undersigned does not resolve

plaintiff's potential rescission claim under TILA can be applied to claim under Section 2605 of the RESPA as well, as both have a three-year statute of limitations. <u>Compare</u> 15 U.S.C. § 1635(f) <u>with</u> 12 U.S.C. § 2614. The statute of limitation to bring a RESPA claim for violation of 12 U.S.C. § 2605 is three years from the date of the violation. 12 U.S.C. § 2614.

Again, the events upon which plaintiff appears to base her RESPA claim appear to be: (1) defendant's alleged "creation" of loan funds in or about March 2006, and (2) defendant's failure to disclose to plaintiff that the funds came from "thin air" prior to her becoming entitled to those funds. (FAC at 6, 10-13.) As plaintiff's loan was consummated on or about March 30, 2006 (FAC at 5; RJN, Exh. A), the three-year statute of limitations for a RESPA claim arising therefrom ran on or about March 30, 2009. <u>See</u> 12 U.S.C. § 2614. Plaintiff did not file her original complaint until December 24, 2009, almost nine months after this three-year statute of limitations period ran. As described above, neither the FAC nor plaintiff's opposition suggest a factual basis for the application of the doctrine of equitable tolling here. Accordingly, plaintiff's RESPA claim is time-barred, and the undersigned recommends that the motion to dismiss be granted and the claim dismissed. Plaintiff has already received the opportunity to amend her pleading, and her opposition does not suggest any ability to amend her RESPA claim. Therefore, the undersigned recommends that the RESPA claim be dismissed with prejudice.

In sum, as to plaintiff's second claim for relief, the FAC lacks specific facts supporting a claim for fraud and the undersigned recommends that defendant's motion to dismiss be granted and the claim be dismissed with prejudice. As to plaintiff' claim that her loan agreement is void for lack of consideration, the undersigned recommends that defendant's motion to dismiss be granted and the claim be dismissed with prejudice. As to plaintiff's TILA and RESPA claims, the claims are based upon the allegation that plaintiff did not receive disclosure of the true source of her loan funds (specifically, that they came from "thin air" (FAC

whether a failure to reveal the sources of loan funds amounts to nondisclosure under RESPA as a matter of law, as defendant did not raise this argument.

at 13)) prior to her acceptance of those funds in March 2006, and because plaintiff filed her complaint on December 24, 2009, the claims are time-barred.   Plaintiff has already had the opportunity to amend her pleading, and in her opposition (Dkt. No. 41) plaintiff did not suggest any ability to further amend her pleading to salvage these claims.  Therefore, the undersigned recommends that these claims each be dismissed with prejudice.

### 3.   The Third Claim For "Willful Misrepresentation"

Plaintiff's claim for "Willful Misrepresentation, Non-Disclosure and Withholding of Material Facts and Documentation" is based upon the conclusory allegation that defendant participated in nonjudicial foreclosure proceedings even though it "knew" the loan was satisfied within the "first seven days following placement of Borrower's wet ink signature that created the Promissory Note that was then used to create the money in the transaction."  (FAC at 14.)  Plaintiff's theory seems to be that defendant silently participated in foreclosure proceedings, all the while knowing that plaintiff had paid off her loan.  (Id.)

Plaintiff does not allege facts suggesting that her loan obligations were actually satisfied within seven days of her signing the loan documents, or facts suggesting defendant "knew" of such satisfaction, or a facts suggesting defendant made any actual statements or omissions that amounted to misrepresentations.  Moreover, as discussed above, the only pleaded fact that might support the allegation that plaintiff satisfied her loan obligations, is her alleged loan payoff by way of a BPN, which is not a valid tender.

Accordingly, because the FAC does not include factual allegations supporting the claim that defendant made misrepresentations after it "knew" the loan was "satisfied," the undersigned recommends that defendant's motion to dismiss be granted and that the "Willful Misrepresentation" claim be dismissed with prejudice.  Plaintiff has already had the opportunity to amend her pleading, and in her opposition plaintiff did not suggest any ability to amend her complaint to state additional facts that might support the claim.

////

4.    The Fourth Claim For "Failure To Name Real Party In Interest"

Federal Rule of Civil Procedure 17(a) requires that "an action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). Plaintiff's claim that the action should be prosecuted by some other person or entity appears to overlook the fact that *plaintiff* is prosecuting this action. Perhaps also overlooking the fact that plaintiff herself crafted the pleading and is charged with naming the proper defendants, the FAC also confusingly discusses the "real part[ies] in interest" that "should have been named as defendants" (id. at 17-18), including references to the bankruptcy of the United States, and inexplicably listing "the City of London Corporation, The House of Windsor, The Vatican or other unnamed and unrevealed parties." (Id. at 17.) Plaintiff's fourth claim for relief is meandering, lacks supporting factual allegations, and does not state a cognizable claim. Accordingly, the undersigned recommends that the motion to dismiss be granted, and that this claim be dismissed with prejudice. Plaintiff has already had an opportunity to amend her pleading, and in her opposition plaintiff did not suggest any ability to amend her complaint to state additional facts that might support the claim.

5.    The Fifth Claim For "TILA Violations"

Plaintiff's fifth claim for "TILA Violations" is pleaded in one sentence: that defendant "violated 11(eleven) violations [sic] of federal law . . . on alleged loan under TRUTH IN LENDING ACT." (FAC at 19.) This conclusory allegation is not sufficient to support such a claim, is not clearly supported by factual allegations elsewhere in the complaint, and in any event, the deficiencies of the TILA claim are detailed above in connection with plaintiff's second claim for relief. Accordingly, the undersigned recommends that the motion to dismiss be granted, and that this claim be dismissed with prejudice. Plaintiff has already had an opportunity to amend her pleading, and in her opposition plaintiff did not suggest any ability to amend her complaint to state additional facts that might support the claim.

B.    Motion to Expunge Lis Pendens

For all the foregoing reasons, the undersigned recommends dismissal of all claims

1    within plaintiff's FAC, with prejudice.  Because the undersigned recommends dismissal all

2    claims and thus of the entire action, the FAC does not contain a "real property claim" within the

3    scope of California Code of Civil Procedure §§ 405.20, 405.31, and 405.4.  Further, because the

4    party who recorded the notice of lis pendens bears the burden of proof in opposing expungement,

5    and because plaintiff made no substantive arguments regarding the propriety of the lis pendens in

6    her opposition (Dkt. No. 41), plaintiff has not met her burden.  Cal. Civ. Pro. Code § 405.30.

7            Accordingly, because the undersigned recommends dismissal of plaintiff's entire

8    action, the undersigned also recommends that the lis pendens at issue[16] be expunged.  Cal. Civ.

9    Proc. Code § 405.31.  While California Code of Civil Procedure § 405.38 permits an award of

10   attorneys' fees in connection with expungement of lis pendens, the undersigned will not award

11   fees here.  Plaintiff has faced economic difficulties involving the foreclosure of her real property,

12   and defendant has not convincingly demonstrated that plaintiff acted without substantial

13   justification in this litigation or in recording the lis pendens.

14   III.   CONCLUSION

15           For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

16           1.     The motion to dismiss (Dkt. No. 30) plaintiff's First Amended Complaint

17   (Dkt. No. 29) pursuant to Federal Rule of Civil Procedure 12(b)(6) be granted.

18           2.     All claims alleged in plaintiff's First Amended Complaint (Dkt. No. 29) as

19   against defendant Aurora Loan Services, LLC ("Aurora") be dismissed with prejudice.

20           3.     Defendant's requests for judicial notice (Dkt. Nos. 30-2, 32-3) be granted.

21           4.     Defendant's motion to expunge the lis pendens (Dkt. No. 32-1) be granted,

22

23       [16]  While defendant's request for judicial notice (Dkt. No. 32-3 at 2) identifies the Notice
     of Pendency of Action as a document recorded in the "County of Orange Recorder's Office," this
24   reference appears to have been typographical error.  Nevertheless, the actual document attached
     as Exhibit F to the request for judicial notice (Dkt. No. 32-3 at 2, Exh. F) appears to be the
25   correct Notice of Pendency of Action.  Accordingly, the undersigned recommends dismissal of
     the Notice of Pendency of Action plaintiff recorded on October 30, 2009, in the official records
26   of the County of San Joaquin Recorder's Office as Instrument Number 2009-158423.

1   and the notice of pendency of action recorded by plaintiff on October 30, 2009 in the official

2   records of the County of San Joaquin Recorder's Office as Instrument Number 2009-158423 be

3   expunged.

4           5.   Defendant's request for attorneys' fees (Dkt. No. 32-1 at 12) pursuant to

5   California Code of Civil Procedure § 405.38 be denied.

6           6.   Because all claims against defendant Aurora are dismissed, and because

7   Aurora is the only named defendant in this case, plaintiff's action be dismissed with prejudice

8   and the Clerk of Court close this case and vacate all future dates in this case.

9           These findings and recommendations are submitted to the United States District

10   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

11   days after being served with these findings and recommendations, any party may file written

12   objections with the court and serve a copy on all parties.  Id.; see also E. Dist. Local Rule 304(b).

13   Such a document should be captioned "Objections to Magistrate Judge's Findings and

14   Recommendations."  Any response to the objections shall be filed with the court and served on

15   all parties within fourteen days after service of the objections.  E. Dist. Local Rule 304(d).

16   Failure to file objections within the specified time may waive the right to appeal the District

17   Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d

18   1153, 1156-57 (9th Cir. 1991).

19           **IT IS SO RECOMMENDED.**

20   DATED:  April 29, 2011

21

22

                                 KENDALL J. NEWMAN

23                                    UNITED STATES MAGISTRATE JUDGE

24

25

26